Danforth, J.
On the 16th of April, 1878, Charles Morgan made a will in these words: “ All my property, real and personal, is hereby devised and bequeathed as provided by the laws of the State of New York in cases of intestacy.” He appointed his wife, Mary J. Morgan, executrix, and on the eighth of May died. Letters testamentary were duly issued, and in February, 1880, the executrix applied to the surrogate for a judicial settlement of her account. Among other things-r-not material upon any question before us — she charged herself with seventeen thousand nine hundred and forty shares of the capital stock of “ Morgan’s Louisiana and Texas Railroad and Steamship Company.” Objections were filed in behalf of several grandchildren and great-grandchildren to the effect that she should have charged herself with and accounted for thirty-two thousand other shares of that stock. The testator, besides his widow and these objectors, also left surviving two married daughters, Mrs. *542 Frances E. Quintará and Mrs. Maria L. Whitney, and a grandson, Richard J. Morgan, and anticipating a claim that these shares had been transferred by the testator before the execution of his will, the contestants also objected that there never was complete delivery of the shares, but if there were, then it was the result of undue influence; and if not that, the account was wrong because it fails to charge such of the above-named persons and Mrs. Mary J. Morgan, the widow of the testator, with seven thousand five hundred shares of that stock, “ as advancements to each of them by the decedent within thirty days previous to his death.”
By consent of all parties the surrogate sent the account to a referee with directions “ that he proceed to take testimony as to the facts in relation thereto, to examine the account rendered, to hear and determine all disputed claims and other matters relating to said account, and to make report thereon with all convenient speed, subject to the confirmation of the surrogate.”
The referee, after a protracted hearing of testimony offered by all the parties, made a report by which he found that none of the objections were well taken. Upon motion the surrogate confirmed, the report of the referee, -and upon appeal to the general term that decision of the surrogate was affirmed. In all these tribunals it was held that the transfers of the thirty-two thousand shares were complete and effectual before the execution of the will, and that the principle of advancement was not applicable. It thus appears that the arguments of the appellants have failed to convince either one of three tribunals that the positions lying at the bottom of their contention were well founded, and after the most careful consideration, we find no error in the determination of which they now complain. So far, indeed, as Mr. Quintará and Mr. Whitney are concerned, I do not understand that the learned counsel for the appellant makes any claim that the shares transferred to them are to go back to the estate, or be taken account of in any way, as against the executrix. So far as the shares claimed by Mrs. Morgan are concerned, they cannot be affected by any considerations growing out of the statute relating to advancements, for such a set-off as allowed only against children. 1 Rev. St., p. 754, § 23. So far as the validity of the transfer of that portion, and the residue of the 30,000 shares, depends upon a perfected delivery to the donees, the evidence warrants the conclusion that nothing was left undone which was necessary to be done to deprive Mr. Morgan of the title thereto.
Upon the question of advancement, the cases cited by the appellants are numerous ; but, upon the circumstances of the case, ineffectual to change the result reached by the court below. They do not show, nor has any case been found to show, that a gift to one, entitled as a child to share in the estate of the donor, will be held to be an advancement when it expressly *543 appears to have been tlie intention of the father that the gift should not be considered as such. The evidence goes to that length in this case, and overcomes the presumption which might otherwise attach. It sustains the finding of the surrogate that “ the transfers were not made by Charles Morgan as advancements, or by way of settlement or portion in life, but were made for business reasons, connected with or growing out of the operations and prospects of the said corporation, and with the intent on his part that, by means of said transfers and other dispositions of property, simultaneously made by him, a controlling interest in the capital stock of the said corporation should be vested in his said transferees.”
The acts of the testator, and his declarations, permit no other interpretation. If by his will it is apparent that he intended all his children to share in the distribution of his estate, his conduct and his words in parting with portions of it before he made the will show clearly that he did not intend they should share equally. Circumstances of his own creation leave no doubt as to his design, and show that in his mind inequality was equity. It would, we think, defeat his purpose if the court should hold that the gift under the will should be impaired or lessened by his previous bounty.
I do not intend, however, to discuss this ease at any length. It has been sufficiently examined and discussed by the courts below, and it would be a useless repetition to do more than announce our conclusions.
In the first place, We are of opinion that the evidence warrants the conclusions of the surrogate that the transfers of stock were complete, and that the legal title of the shares passed to the donees before the execution of the will; (2) that none of the stock thus transferred was intended by the donor to be advances by way of settlement or portion, but the contrary. These propositions depended upon inferences from evidence which, if not all one way, was certainly not altogether in favor of the appellant’s view. On the part of the donor was the expression of an intention to give, the actual delivery of written instruments declaring that intention,, and sufficient to warrant the transfer of title upon the records of the corporation, and which proved to be legally available for that purpose. Every act essential to deprive the donor of his possession and title was performed, and the actual as well as the apparent title vested in the donees. The evidence allows this view. If, as the appellant claims, the testimony of the witness Margaret Dobson, or some expressions in that of others, permits in either respect a different conclusion, neither the referee nor surrogate nor general term deemed it satisfactory or controlling. It follows that neither the shares of stock, nor the value thereof, were to be reckoned as part of the testator’s estate, nor the *544 donees, who were distributees also, to be charged therewith in estimating the amount of their respective shares under his will.'
A single question remains. An exception was taken before the referee to evidence, but, so far as appears, not presented to the general term. One L. was called by the proponent. It appeared at the outset of his examination that he was a lawyer, residing in New Orleans, holding there the relation of attorney and counsel to Mr. Morgan, (the testator,) and that at his request he came to New York, where he was consulted and employed by him, among other things, in relation to the stock in question, its certificates and transfer, and other affairs connected with it, his property, and his plans and desires in regard to it. The examination of the witness on these subjects continued to such length that in the printed record it covers nearly nine pages, with only a single. objection, interjected at a point where the witness was speaking of one of his interviews with Mr. Morgan in regard to the law of this state relating to the distribution of the property of an intestate. The witness had stated that on the second of April he made a brief statement to the testator in regard thereto, and subsequently, on the day before he made his will, a very full statement. He was then asked, “ What was that statement ? ” and the counsel for contestants .objected as immaterial and incompetent. It is obvious that this objection was too general, and did not raise the question now presented. It was overruled and the witness answered fully, and continued in regard to the execution of the transfers the day before the will was executed, saying : “ I did not, at that time, state to him anything about the law of New York as to wills.” “ At this point the contestant’s counsel (Mr. Parsons) objected to any testimony as to what passed between the witness and Mr. Morgan preliminary’to the execution of the will, or anything about the subject of his property, as immaterial and incompetent. Mr. Davison, on behalf of the minors, represented by himself and Mr. Burrill, unites in the objection. Mr. Choate, for the executrix, suggests that the objection ought not to apply to what has already come from the witness. The counsel should not wait'Until they hear what the evidence is before objecting to its incompetency, and that such objection can only be properly applied to what is to come hereafter. Mr. Parsons makes the further objection that what passed between this witness and Mr. Morgan is privileged, and protected by the relation of client and counsel. Mr. Davison joins in the objection, as before. Objection overruled. Exception.”
This is the exception relied upon. It can have no force, so far as the testimony which preceded it is concerned. To that extent the witness had gone without interruption, and he must *545 be deemed to have been thought competent, and his evidence admissible, by both parties. Moreover, at the precise point where the objection was made, the witness was testifying in answer to the question, “ Tell what he [Mr. Morgan] said.” To that question no objection was interposed, and he had completed his answer and narration as to what occurred at the interview of which he was speaking. Then came the objection. If, as would seem, it had reference to testimony already given, it came too late. It is entirely clear that a party who has sat by during the reception of incompetent evidence without properly objecting thereto, and thus taken his chance of advantage to be derived by him therefrom, has not, when he finds such evidence prejudicial, a legal right to require the same to be stricken out. But even if the referee or surrogate could, in their discretion, strike out any of the testimony, no request was made that either should do so. If the objection related to evidence which might follow, it was too general. There was no new question to the witness, nor any offer of evidence. As to what followed, therefore, the objection was premature. It was not repeated. But assuming it to be good as to all that followed in the answer of the witness before the next question was put, it becomes unimportant. So much might be stricken out without impairing the weight of the evidence or in any way affecting the conclusion reached upon the merits by either court. In no aspect could the exception require a new trial. For the evidence admitted under it fails to create even a susnicion that the exceptant was necessarily prejudiced thereby. Code, § 2545.
The judgment should be affirmed, with costs to the respondents to be paid by the appellants.
All concur.